UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TRUNG DANG MAI,

Petitioner,

v.

MARK BOWEN, Warden, Adelanto Detention Facility, et al.,

Respondents.

No. 5:25-cv-02707 DSR

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE**

**A# 027-741-943**

## 1. INTRODUCTION

On October 14, 2025, Petitioner Trung Dang Mai filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Doc. No. 1. Petitioner is subject to a final order of removal to Vietnam entered in 2004 and has been detained by United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center since September 24, 2025. He contends that his continued detention is no longer authorized by 8 U.S.C. § 1231(a)(6) because his removal is not significantly likely to occur in the reasonably foreseeable future. See Zadvydas v. Davis, 533 U.S. 678 (2001). As of June 11, 2026, all Parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). See Doc. No. 23. For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to release Petitioner immediately.

**2. BACKGROUND**

**A. Procedural History**

Petitioner filed the Petition on October 14, 2025, naming as Respondents the Warden of the Adelanto Detention Facility where he is held, the Director of the Los Angeles Field Office of ICE whom Petitioner alleges is his legal custodian and has authority to release him, the Secretary of the Department of Homeland Security, and the Attorney General of the United States. On December 1, 2025, he filed an Ex Parte Application for a Temporary Restraining Order. See Doc. No. 5. Respondents opposed the TRO Application on December 15, 2025 (Doc. No. 10) with the supporting Declaration of Deportation Officer Christopher Jenson ("Jenson Decl."), Doc. No. 10-2. Judge Anderson denied the TRO Application on December 17, 2025, on the ground that Petitioner had not then shown a likelihood of success on the merits, specifically, that he had "not met his burden to show that he will not be removed to Vietnam within the 'reasonably foreseeable future' during the length of a detention that is presumptively unreasonable." See Doc. No. 11 at 4.

Respondents filed an Answer on February 19, 2026. See Doc. No. 16. On February 20, 2026, Petitioner filed what his counsel docketed as Petitioner's "Reply," but the attached document is instead another copy of Respondents' Answer. See Doc. No. 17. Petitioner's counsel remedied this mistake and filed the Reply on August 10, 2026. See Doc. No. 26.

On June 4, 2026, Petitioner filed a second Ex Paret Application for TRO, seeking immediate release under Zadvydas v. Davis, 533 U.S. 678 (2001), on the ground that Petitioner had by then been detained for more than six months. See Doc. No. 19. Judge Anderson denied that Application on the same day because Petitioner had not shown any emergency warranting ex parte relief. See Doc. No. 20. That ruling was expressly without prejudice to Petitioner refiling his request as a noticed Motion for Preliminary Injunction. Id. Petitioner did not file a noticed Motion for Preliminary Injunction, however.

On August 10, 2026, the Court ordered Respondents to file a supplemental status report addressing the status of Petitioner's removal. See Doc. No. 25. Respondents filed the status report on August 24, 2026, supported by the Declaration of Deportation Officer Dade Gomez ("Gomez Decl."). See Doc. Nos. 28, 28-1. Petitioner filed a response to the status report the same day, requesting the Court grant the Petition and order Petitioner's immediate release. See Doc. No. 29.

**B. Petitioner and the Removal Order**

Petitioner was born on October 8, 1985, and admitted to the United States with refugee status on October 31, 1985, at seventeen days old. See Pet. at 7. He has lived in the United States since then. Id. His parents and siblings are naturalized United States citizens, and he has two United States citizen children. Id.

Petitioner states that he was convicted of attempted murder "around 2004." Id. at 8. On July 29, 2004, an Immigration Judge ordered Petitioner removed to Vietnam. See Gomez Decl. (Doc. No. 28-1) at ¶ 6, Ex. A; Jenson Decl. at ¶ 6. Vietnam is the only country designated in the order; the pre-printed alternative-country designation on the order form is struck through. See Gomez Decl. at Ex. A. Appeal of the removal order was waived and the order became administratively final on November 4, 2004. See Gomez Decl. at ¶ 7, Ex. A.

Petitioner was subsequently convicted in 2006 of a controlled substance felony and returned to state custody. See Gomez Decl. at ¶ 8. Upon completion of that term in June 2010, immigration authorities placed him on an Order of Supervision ("OSUP"). Id. at ¶ 9, Ex. B. He remained on supervised release from June 2010 until September 2025. Id. at ¶ 10. On September 24, 2025, Petitioner was served with a Notice of Revocation of Release and taken into ICE custody for removal. See Jenson Decl. (Doc. No. 10-2) at ¶¶ 9-10. Though that Notice stated Petitioner would "promptly be afforded an informal interview" as required under 8

C.F.R. § 241.13(i)(3), as of August 24, 2026 – eleven months later – such informal interview still had not been scheduled. See Doc. No. 28 at 2:25.

**C. Efforts to Effectuate Removal**

The record reflects sustained effort by ICE to obtain a travel document for Petitioner. On September 29, 2025, ICE interviewed Petitioner for a travel document appointment. See Gomez Decl. at ¶ 11. On October 23, 2025, ICE submitted a formal written request for a travel document to the Consular Section of the Embassy of Vietnam, enclosing supporting documents and invoking Annex 9, Chapter 5.26 of the Convention on International Civil Aviation, under which a contracting State is to respond within thirty days either by issuing a travel document or by establishing that the individual is not one of its nationals. Id. at ¶ 12, Ex. C. On January 12, 2026, Petitioner was interviewed (presumably remotely) by Vietnamese authorities in Hanoi, Vietnam. Id. at ¶ 13.

Between November 17, 2025, and August 13, 2026, ICE followed up with the Government of Vietnam regarding Petitioner's travel documents on eighteen separate occasions. Id. at ¶ 14.

Despite these efforts, as of Respondents' August 24, 2026, Supplemental Status Report, no travel document, passport, or other authorization has been issued to effectuate Petitioner's removal to Vietnam. Id. at ¶ 15. No removal flight or charter has been scheduled and, as Officer Gomez declares, this is "specifically because there is no travel document, passport, or authorization from the Vietnamese government to accept this alien." Id. Respondents report no substantive response of any kind from the government of Vietnam, either to the October 23, 2025, request or to any of the eighteen follow-ups, including none in the nearly eight months since the Hanoi interview on January 12, 2026.

Petitioner has now been detained continuously for more than eleven months since his most-recent immigration detention began.

## 3. DISCUSSION

### A. Legal Standard

When a final order of removal is entered, the Government generally must remove the noncitizen within a ninety-day "removal period," during which detention is mandatory. See 8 U.S.C. § 1231(a)(1)(A), (a)(2); Zadvydas, 533 U.S. at 682. Beyond that period, certain noncitizens, including those removable on criminal grounds, may continue to be detained. See 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) does not authorize indefinite detention, however. The statute "implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States," and "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 689, 699. For the sake of uniform administration, the Supreme Court recognized six months as a presumptively reasonable period of post-removal-order detention. Id. at 701.

The six-month period is a presumption and not a guarantee of release; detention may continue so long as removal remains reasonably foreseeable. Id. After six months, the burden is on the noncitizen to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.; see also 8 C.F.R. § 241.13. If that showing is made, the government then "must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. And "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

### B. The Presumptively Reasonable Period

Petitioner's removal order became administratively final in 2004. Even measuring from Petitioner's most-recent detention on September 24, 2025, the ninety-day removal period expired in December 2025 and the six-month presumptively reasonable period expired on approximately March 24, 2026.

Petitioner has now been detained for nearly double that six-month presumptive period. The question, therefore, is whether his removal is reasonably foreseeable. See Zadvydas, 533 U.S. at 701.

**C. Petitioner's Burden**

Petitioner has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. He has been subject to a final order of removal for more than twenty-one years yet still has not been removed. During the eleven months of his present detention, ICE has requested a travel document, arranged for Petitioner to be interviewed by Vietnamese authorities in Hanoi, and followed up with the government of Vietnam eighteen times. Nevertheless, the government of Vietnam has issued no travel document and has provided no substantive response. Nearly eight months have passed since the Hanoi interview without result.

Petitioner also entered the United States in 1985. Under Article 2(2) of the 2008 Agreement Between the Government of the United States and the Government of the Socialist Republic of Vietnam on the Acceptance of the Return of Vietnamese Citizens, "Vietnamese citizens are not subject to return to Vietnam under this Agreement if they arrived in the United States before July 12, 1995." Pet., Ex. B. The 2020 Memorandum of Understanding established a discretionary, case-by-case process for certain pre-1995 arrivals, but it "constitutes an understanding only between the Participants and does not give rise to any rights or obligations" and "does not create or confer any rights, privileges, or benefits on any individual." Pet., Ex. C § 3. Petitioner does not have a Vietnamese passport or other travel document. See Gomez Decl. at ¶ 15; Trinh v. Homan, 466 F. Supp. 3d 1077, 1087 (C.D. Cal. 2020) (ICE confirmed that pre-1995 Vietnamese nationals, "except ones that currently hold a valid passport or other travel document, generally are not significantly likely to be removed in the foreseeable future").

Petitioner has also submitted the Declaration of Dr. Thao Ha, who describes the repatriation process for pre-1995 Vietnamese arrivals as uncertain and protracted, and who identifies the obstacles that process presents including the absence of birth certificates and other identity documents, linguistic barriers, and complex consular verification procedures. See Doc. No. 5-1, Ex. L.

Courts have found removal to Vietnam not reasonably foreseeable in comparable circumstances. See, e.g., Hung v. Marin, No. 26-cv-00768, 2026 WL 712220, at *5 (C.D. Cal. Mar. 5, 2026); Truong v. Lyons, No. 26-cv-00021, 2026 WL 855150, at *7 (C.D. Cal. Mar. 20, 2026) ("[T]he mere fact that a request for Petitioner's travel documents was sent to Vietnam on January 8 is not enough to show that Petitioner's removal is reasonably foreseeable."); Kuot v. Bondi, No. 25-cv-02313, 2025 WL 3763930, at *2 (W.D. Wash. Dec. 30, 2025).

Petitioner has met his burden to show good reason to believe that there is no significant likelihood of removal to Vietnam in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

**D. Respondents' Burden on Rebuttal**

The burden therefore shifts to Respondents to "respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. The evidence Respondents have submitted shows that they prepared and transmitted a formal travel document request to the Vietnamese embassy within a month of taking Petitioner into custody, secured an interview of Petitioner by authorities in Hanoi, and thereafter pressed the government of Vietnam eighteen separate times over nine months. Officer Gomez's Declaration documents that effort in detail. This record plainly establishes Respondents' diligence in trying to remove Petitioner.

But Zadvydas does not ask whether the Government has tried. It asks whether removal is significantly likely to occur in the reasonably foreseeable future. Id. Diligence is a backward-looking measure of effort; likelihood is a forward-looking measure of result. Where, as here, sustained and well-

documented effort has produced nothing over eleven months, that effort is evidence bearing on the question of likelihood of removal in the reasonably foreseeable future, but it points against such likelihood of removal, not toward it. Eighteen unanswered requests tell the Court a great deal about the disposition of the receiving government, and what they indicate is that further requests are unlikely to produce a different result anytime soon.

Officer Gomez's Declaration only confirms this. He declares that no removal flight has been scheduled "specifically because there is no travel document, passport, or authorization from the Vietnamese government to accept this alien." Gomez Decl. at ¶ 15. Thus, the obstacle to removal is the receiving government's non-acceptance. See Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008) (a noncitizen is in "removable-but-unremovable limbo" where he "is unremovable because the destination country will not accept him.").

Respondents' remaining submissions do not fill the gap. Officer Jenson declared in December 2025 that in his recent experience, Vietnam was issuing travel documents upon ICE request, including for pre-1995 immigrants. See Jenson Decl. at ¶ 13. Yet here, the intervening nine months have not borne that out as to Petitioner. Respondents' citations to other cases in which Vietnamese nationals were removed (Answer at 2-3), counter some of Petitioner's broader claims, but are not evidence concerning Petitioner's individual factual situation. And Respondents have offered no travel document, no communication from Vietnam, no projected timeline, and no view from the Department of State, see 8 C.F.R. § 241.13(f), from which the Court could find that removal is reasonably likely to occur within any reasonably foreseeable period.

That responsibility for this impasse appears to rest with the government of Vietnam rather than with Respondents does not alter the analysis. The Zadvydas limitation applies without regard to the reason removal cannot be accomplished. See Clark v. Martinez, 543 U.S. 371, 386–87 (2005). Where a foreign government

declines to accept the return of a person the United States seeks to remove, the consequence under the statute is that continued detention loses its authorization, not that the individual is confined indefinitely while the diplomatic impasse persists.

Finally, the Court notes that the December 17, 2025, denial of Petitioner's first TRO Application does not compel a different result. That ruling was based on the facts that existed at that time. Then, less than three months had passed since Petitioner's most-recent immigration detention, ICE had only recently transmitted a travel document request, and the standard for ex parte emergency relief is exacting. None of those conditions exist today. Now more than 11 months have passed, the government of Vietnam has not responded to Respondents' extensive efforts to secure travel documents for Petitioner, and we are now at the stage of a final decision on the merits after full briefing on the Petition (including the recent supplemental submissions by the parties). Under Zadvydas, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." 533 U.S. at 701. Eleven-plus months in, with no travel document, no response, and no scheduled removal, the Court cannot find that removal is reasonably foreseeable.

**4. CONCLUSION**

Petitioner has shown good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, and Respondents have not rebutted that showing. Petitioner's continued detention is therefore no longer authorized by 8 U.S.C. § 1231(a)(6), and he is entitled to release under appropriate conditions of supervision. See Zadvydas, 533 U.S. at 699-701 (release "may and should be conditioned" on appropriate terms of supervision). Because Petitioner is entitled to release on this ground, the Court does not reach his remaining claims.

/ / /

/ / /

IT IS THEREFORE ORDERED:

(1) The Petition for Writ of Habeas Corpus is GRANTED;

(2) Respondents are ORDERED to release Petitioner **Trung Dang Mai (A# 027-741-943)** from custody immediately, subject to the conditions of his prior Order of Supervision and such additional conditions of supervision as Respondents may lawfully impose under 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5, and to return to Petitioner all property taken from him during his arrest and processing into detention;

(3) Respondents shall also provide Petitioner with a copy of this Order at or near the time of release;

(4) Respondents are further ORDERED to file a Status Report within three days of this Order confirming Petitioner's release and return of any personal property or documents;

(4) Petitioner's remaining claims are DENIED AS MOOT;

(5) The Court will issue on a separate form Judgment consistent with this Order. The Court will consider any application for costs and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, upon a proper Motion for such relief filed in compliance with the applicable requirements of that statute and the Local Rules of this Court. The Court retains jurisdiction to adjudicate any such motion and wany collateral enforcement issues.

IT IS SO ORDERED.

DATED: September 8, 2026



HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE